15  339
126   20

15  339
127  227

## Styer *versus* Freas.

A testator devised to his wife the use or the rents and profits of his lands during her natural life, and directed that, *after her decease*, his daughter Mary shall have and enjoy the use and profits of a part of the said lands, for and during the term of her natural life ; and, *after her decease*, the said part of the lands to be sold by trustees or the survivors or survivor of them ; and the money arising from said sale to be paid, in equal shares, to the children of Mary ; but if any of the children shall be in their minority, then the trustees to place such child's share at interest, to be paid as they severally arrive at lawful age.   Mary died leaving children.   After her death, the widow and another, acting trustees and executors, sold a part of the land of which Mary was to have the use and profits, received a portion of the purchase-money, and executed a deed for the premises, and the purchaser gave his bond, with warrant of attorney, for the balance of the purchase-money : *Held*, that, the daughter being dead, the widow having joined in the sale and conveyance, the power was legally executed, and the purchaser was bound to pay the balance of the purchase-money.

ERROR to the Common Pleas of *Montgomery county*.

This was a case stated, in which Elizabeth Styer and Henry Styer, acting trustees and executors, &c. of David Styer, deceased, were plaintiffs, and Solomon Freas was defendant.

The following case was stated for the opinion of the court, to be considered as a special verdict, either party to have the right to take a writ of error :—

David Styer died at Montgomery county, on or about the day of          A. D. 1825, having first made his last will and testament, wherein he appointed the said Elizabeth Styer, Henry Styer, and Charles Styer, his executors, two of whom, the said Elizabeth and Henry, the plaintiffs, took upon themselves the burden of the said trust.   By his said will, which was dated the 10th day of June, A. D. 1825, and duly proven and registered in the register's office of said county, on the 5th day of September, A. D. 1825, the said testator devised and bequeathed, among other things, as follows, to wit :—" I give and bequeath unto my dear wife, Elizabeth, all my personal property, to be at her absolute disposal.   Also, I give her all the use, or the rents and profits of all my lands, with the buildings and appurtenances, situate *in Whitpain township*, viz. the lot situate on Skippack road, now occupied by John Fitzgerald ; and two lots, situate on the Broad-axe road, one of them adjoining lands of Dr. Thomas C. James, Adam Dotts, and others ; the other adjoining lands of John Slingluff, Baltis Hoffman, and the said road, containing in the whole forty-five acres, (be the same more or less,) *during the term of her natural life*.   I also give her, after my just debts and funeral expenses shall have been paid, one-half the yearly rents and profits of my farm in Whitemarsh township, during her natural life.   It is also my will, and I do hereby give her the right and privilege of choosing on whichsoever of my farms she will re-

[Styer *v.* Freas.]

side, and she shall have the use of a sufficiency of suitable house-room in the buildings on whichever of my farms she shall reside,'' &c. And further : " It is my will, and I hereby direct, that after the decease of my wife Elizabeth, my daughter Mary shall have and enjoy the use and profits of all my three before described lots of land, situate in Whitpain aforesaid, with all the buildings and appurtenances, for and during the term of her natural life, (but to commit no waste or damage thereon, nor suffer it to be done by others,) and, after the decease of my said daughter, the aforesaid three several lots of land shall be sold by said trustees, or the survivors or survivor of them, who are hereby fully authorized to execute good titles for the same to the purchasers thereof, and the money arising from said sale to be paid in equal shares to all the children of my daughter Mary ; but if any of said children shall be in their minority, then said trustees to place such child's or children's share at interest, on good security, and to be paid them as they shall arrive to lawful age," &c. The decedent's daughter Mary died on or about the        day of        18.  , leaving issue, to wit, four children, one of whom, namely, Elizabeth, is intermarried with the defendant. On the 11th of November, A. D. 1839, the plaintiffs, Elizabeth Styer, *the widow of decedent,* and Henry Styer, acting trustees and executors as aforesaid, *the said Mary, the daughter of decedent, being then deceased,* and the said Elizabeth, the widow, being still in full life, exposed at public sale a certain messuage and three lots of land, late the property of the said testator, situate *in Whitpain township,* (being the same lands of which the said testator, in that part of his said will hereinbefore recited, had devised all the use, or the rents and profits, to his said wife Elizabeth, during the term of her natural life, and after her decease to his daughter Mary for life, and after her decease to be sold,) and sold a part of the same, to wit, a messuage and tract of about thirty acres of land, *to the said defendant,* for the sum of two thousand one hundred and ninety dollars. On the 2d day of April, A. D. 1840, the said plaintiffs, trustees as aforesaid, executed to the defendant a deed for the land and premises so sold to him as aforesaid, in fee simple, at which time the defendant entered into possession and paid them, the said plaintiffs, the sum of seven hundred and thirty dollars, in cash, and gave them his bond and warrant of attorney to confess judgment thereon, in the penal sum of two thousand nine hundred and twenty dollars, conditioned for the payment of fourteen hundred and sixty dollars, the balance of said purchase-money, which said bond is still unpaid.

The question for the opinion of the court is, whether the plaintiffs are entitled to recover of the defendant the amount of the said bond and interest.

If the court should be of the opinion that they are entitled to recover, then judgment to be entered for the plaintiffs. If of the

[Styer *v.* Freas.]

opinion that they are not entitled to recover, then judgment for defendant.

The will, bond, and deed referred to are to be considered a part of this case.

March 1, 1844.—The court is of the opinion that the executors had no right to sell during the life of the widow, and that the consideration of the bond having failed, the title being defective, the defendant is entitled to judgment on the case stated.

It was assigned for error:

That the court erred in rendering judgment for the defendant on the case stated; the judgment should have been for the plaintiffs.

The case was argued by *Mulvany*, for plaintiffs in error.—The defendant accepted the deed, paid part of the purchase-money, and entered into possession of the premises, and the question is, can he now object to pay the balance of the purchase-money?

To entitle a purchaser to defend against the payment of a bond given for the purchase-money, he must show, not that the title which he has got is doubtful or not merchantable, "but he must show that it is positively bad, by proving a superior indisputable title to the land in a third person or party, who is asserting his right thereto by virtue of such title; otherwise, it may be that the purchaser will never be disturbed in his enjoyment of the land by reason of it; or if he should, he may have his remedy on the covenants, contained in the deed of conveyance made to him." "In order to make such outstanding title a good defence, in such cases, it must be clearly shown to be indubitably good, and that the land is actually claimed under it:" Ludwick *v.* Hunsicker, 5 *W. & Ser.* 58. "A different principle governs where the contract for the purchase of the land remains *in fieri*, and the action is brought on the contract itself, with a view to enforce the payment of the purchase-money according to its terms. There, if it should appear that the title of the vendor to the land is anywise doubtful, the vendor will not be held bound to pay the purchase-money for it:" *id.*

But, in the case under consideration, it is submitted that the power given to the trustees was well executed, and that the title of the defendant is good and valid—for the sale was not made to him by the trustees until after the decease of Mary—and the will expressly says: "After the decease of my said daughter, the aforesaid three several lots of land shall be sold by my said trustees, or the survivors or survivor of them, who are hereby fully authorized to execute good titles for the same to the purchasers thereof, and the moneys arising from said sale to be paid in equal shares, to all the children of my daughter Mary." The widow of the testator joined in the deed, she being one of the trustees, and the children of Mary (with one of whom the defendant was intermar-

ried) could never disturb him in the enjoyment of the land: 1 *Harris* 533; 8 *Barr* 424.

*G. R. Fox,* contra, contended that the executors had no power to sell during the life of the widow: 1 *Whar.* 266, Burr *v.* Sim; 8 *Watts* 203, Hay *v.* Mayer; 10 *Watts* 274; 8 *Ser. & R.* 299; 1 *Bin.* 546, Smith *v.* Folwell.

The proceeds of sale must remain in the hands of the trustees until the death of the widow, and may be dissipated. The persons in this case entitled to receive it are *minors.*

The land may not sell as well, charged with the widow's interest, as free from it.

The heirs may elect to take the land itself: 3 *Whar.* 62; 10 *Watts* 278.

If the sale be void, the purchaser should not be compelled to pay: 1 *Ser. & R.* 438; 5 *id.* 201; 7 *id.* 43; 5 *W & Ser.* 51; 10 *Barr* 73.

The opinion of the court was delivered March 31, 1851, by

GIBSON, C. J.—As a general rule, it is not to be disputed that a power to sell on the happening of an event, cannot be well executed before the event; but there may be exceptions to it. Executors can sell only at the time intended; but the intention may be discoverable, not only from the words of the power, but from the whole will. When an event turns up which the testator had not contemplated, a court is compelled to inquire how he would have provided for it had it been foreseen—in short, to suppose an intention for him where he had none—and this case presents that difficulty. What we have to do is, to apply to it the principles of our own decisions. Where the time is postponed for the exemption of a prior provision and protection of a particular person, it may be hastened by the assent of that person, as it was in Gast *v.* Porter; but where it has been postponed with a view to a probable rise in value, the persons entitled to the benefit of the chance may insist on having it; as they did in Loomis *v.* McClintock, and the other cases in our books. The present is stronger than Gast *v.* Porter, inasmuch as the power was executed in conformity to the letter. The devise is to the testator's wife for life, remainder to the daughter for life; and the power was to sell at the daughter's death. Why? Because the devises to them would have been broken in upon by a sale before their estates were spent. Contrary to the testator's expectation, the daughter died before the mother; and it is not to be doubted that, though the words of the power would have admitted of an immediate execution of it, the intention of the testator, disclosed by the rest of the will, would not. The fee could not have been sold without the mother's assent. But there was nothing to restrain her from parting with her estate by

[Styer *v.* Freas.]

an ordinary conveyance; and the daughter being dead, not only the words of the power but the intent of the testator, were fulfilled by her joining in the ·deed.

Judgment of the Common Pleas reversed, and judgment in this court for plaintiff.